COURT OF APPEALS OF VIRGINIA

Present:    Judges Beales, O'Brien and Fulton
Argued by videoconference

TIFFANY BYRD ELLIS

MEMORANDUM OPINION[*] BY
v.       Record No. 0397-21-2          JUDGE MARY GRACE O'BRIEN
                                       APRIL 26, 2022

SUSSEX DEPARTMENT OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF SUSSEX COUNTY
W. Edward Tomko, III, Judge

Del M. Mauhrine Brown for appellant.

Anne L. Roddy (Sherry L. Gill; Amanda D. Wood, Guardian *ad
litem* for the minor children; Barnes & Diehl, P.C.; Sherry L. Gill,
Esq., PLLC, on brief), for appellee.[1]

Tiffany Byrd Ellis ("mother") appeals orders terminating her residual parental rights

pursuant to Code § 16.1-283(B) and (C)(2). She contends that both the circuit court and this Court

erred by denying her motions for an extension of time to file a written statement of facts in lieu of a

transcript. She also challenges the sufficiency of the evidence to establish that termination of her

parental rights was in the children's best interests.

## BACKGROUND

Mother had four children: one born in 2009, another born in 2010, and twins born in 2013.

The biological father's parental rights were previously terminated, and the children lived with

mother and the stepfather. The children had been in foster care in another jurisdiction from

approximately May 2013 until February 2016.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Pursuant to Rule 5A:19(d), the guardian *ad litem* filed a notice relying on appellee's brief.

In June 2019, the Sussex Department of Social Services ("DSS") obtained a protective order for the four children based on reports that one child had been beaten by the stepfather. In July 2019, the Sussex Juvenile and Domestic Relations ("JDR") District Court entered adjudicatory orders finding abuse and neglect.

On September 11, 2019, after the dispositional hearing on the protective order, the JDR court transferred custody of the children to DSS, with a goal of "return home" for each child. According to the foster care service plans contained in the record, DSS attempted to work with mother to "prevent removal of the children from the home and further abuse/neglect." However, mother failed to provide requested medical information about the children, failed to produce employment information, and the family was due to be evicted on September 12, 2019. DSS continued to provide services after the children were placed in foster care.

In February 2020, DSS recommended changing the goal to adoption and began proceedings to terminate mother's parental rights. In reports filed with the court, DSS described services offered to meet the family's needs and identified barriers to the initial "return home" goal. The barriers included a lack of "safe, stable, and adequate housing" and mother's failure to provide verification of continued employment and income. DSS also expressed concerns about mother's parenting ability, noting that although mother engaged with the children during supervised visitation, she often "defer[red] to DSS or the [foster] parent." DSS concluded that "return home" was no longer an appropriate goal because mother had not maintained employment and stable housing. DSS had been "unable to provide consistent services" because mother and stepfather moved frequently, communicated only sporadically with the agency, and "fail[ed] to provide reliable information." According to DSS, if the children returned home, they would face the same unstable conditions that led to their placement in DSS custody.

On June 10, 2020, the JDR court terminated mother's parental rights based on clear and convincing evidence of abuse and neglect under Code § 16.1-283(B), and mother's failure to substantially remedy the conditions leading to foster care placement within twelve months, despite the services provided by DSS, under Code § 16.1-283(C)(2).

On March 26, 2021, following a two-day trial *de novo*, the circuit court entered orders terminating mother's parental rights on the same grounds. A court reporter was not present for the circuit court trial, and no transcript of that proceeding exists.

Mother timely filed a notice of appeal with the circuit court and mailed a copy to this Court pursuant to Rule 5A:6. In her notice, she stated that "a written statement covering the facts, testimony[,] and other incidents of the trial will be filed, all in accordance with Rules 5A:6[,] 5A:7[,] and 5A:8 of the Supreme Court of Virginia."

Pursuant to Rule 5A:8(c)(1), mother's deadline to file her statement of facts in circuit court was "55 days after entry of judgment,"[2] or May 20, 2021. That day, however, mother filed a motion with this Court requesting a thirty-day extension to file her statement of facts.

On May 28, 2021, this Court denied mother's request based on lack of jurisdiction, citing Rules 5A:3(b) and 5A:8(c).

The circuit court conducted a telephonic hearing June 28, 2021 on mother's request for an extension to file a statement of facts. However, the record contains no written motion by mother asking the circuit court to grant an extension, and no transcript exists for this telephonic hearing. The circuit court denied mother's request but did not contemporaneously enter a denial order.

On July 14, 2021, mother filed a draft order in circuit court denying her motion. For the first time, mother also filed a proposed statement of facts. The circuit court entered the denial order on

---

[2] Effective January 1, 2022, Rule 5A:8(c)(1) provides sixty days to file a statement of facts.

October 13, 2021, which was transmitted to this Court and made part of the record along with mother's proposed statement of facts, unsigned by the circuit court.[3]

ANALYSIS

A. Circuit Court's Denial of Motion to Extend Time for Filing Statement of Facts

Mother contends that the circuit court erred by denying her request for an extension of time to file a statement of facts. The court did not address the merits of her request but denied the motion because it was not timely filed.

The Supreme Court Rules impose requirements for filing requests for an extension of time. We review a trial court's interpretation of the Rules *de novo*. *Belew v. Commonwealth*, 284 Va. 173, 177 (2012); *LaCava v. Commonwealth*, 283 Va. 465, 469-70 (2012) ("A lower court's interpretation of the Rules of [the Supreme] Court, like its interpretation of a statute, presents a question of law that [an appellate court] review[s] *de novo*.").

At all times relevant to this appeal, Rule 5A:8(c)(1) provided that a written statement of facts was due "within 55 days after entry of judgment . . . in the office of the clerk of the trial court." This deadline "may be extended by a judge of the court in which the papers are to be filed upon a showing of good cause sufficient to excuse the delay." Rule 5A:3(b). We have interpreted this rule as authorizing only trial judges to extend the deadline. *See Barrett v. Barrett*, 1 Va. App. 378, 380 (1986). Further, merely "[f]iling a motion for extension does not toll the applicable deadline."

---

[3] Although the record had already been transmitted to this Court, on October 5, 2021, we awarded mother a writ of certiorari directing the circuit court to send "the filings in that court with regard to the statement of facts filed pursuant to Rule 5A:8 and that court's ruling with regard thereto."

- 4 -

Rule 5A:3(b). However, a motion is still considered "timely" if filed "within 30 days after the filing deadline from which an extension is sought." Rule 5A:3(c)(2).[4]

The circuit court entered orders terminating mother's parental rights on March 26, 2021. Under the version of Rule 5A:8(c)(1) applicable at the time, mother would have been required to file a written statement of facts in circuit court within "55 days after entry of judgment," *i.e.* by May 20, 2021, unless she filed a motion for an extension in circuit court within thirty days of that initial deadline. *See* Rule 5A:3(c)(2). Accordingly, mother would have needed to file a motion with the circuit court within thirty days after the initial fifty-five-day filing deadline, *i.e.* by June 19, 2021.

There is no evidence that mother made the required filing in the circuit court within that time period, or indeed at all. Mother did file a request for an extension with *this* Court on May 20, 2021, and she claims that she "simultaneously" filed her motion with the circuit court. However, nothing in the record confirms her claim. Furthermore, the certificate of service attached to the motion filed in the Court of Appeals makes no mention of a simultaneous filing in circuit court.

Although mother arranged a telephonic hearing with the circuit court on June 28, 2021, the hearing occurred nine days after the June 19, 2021 deadline had expired. The record does not demonstrate that mother ever filed a motion for an extension with the circuit court, much less that she did so within the time allotted by Rules 5A:8(c)(1) and 5A:3(c)(2). Mother's motion was

---

[4] This Court does have authority to extend the deadline for filing transcripts, unlike a statement of facts. Rule 5A:8(a). *See also Barrett*, 1 Va. App. at 380. *Barrett* actually held that this Court lacked authority to grant extensions for both transcripts and written statements. *Id.* ("[T]here is no authority in the Rules for this [C]ourt to extend the time for filing the transcript or written statement."). When *Barrett* was decided in 1986, Rule 5A:8(a) did not yet expressly allow judges of this Court to grant extensions to file transcripts. Instead, transcripts were due within sixty days, and only "[t]he judge of the trial court may extend the time for good cause shown." Rule 5A:8(a) (1986 version). In 1990, Rule 5A:8(a) was amended to expressly authorize judges of this Court to extend the transcript deadline. *See* Rule 5A:8 (1990 Replacement Volume 11, at 215). However, Rule 5A:8(c) was not likewise amended. *See id.* Therefore, *Barrett*'s holding—that appellants must "obtain[] an extension of time from the circuit court judge (not a judge of the Court of Appeals)"—applies only to written statements, even though the case itself is about transcripts as well. *See* 1 Va. App. at 379.

therefore untimely. "This Court has no authority to make exceptions to the filing requirements set out in the Rules." *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986). Accordingly, we conclude that the circuit court did not err in denying mother's motion for an extension of time.

### B. This Court's Denial of Motion to Extend Time for Filing Statement of Facts

Mother assigns error to this Court's denial of her motion for an extension of time to file a statement of facts in circuit court. We denied the motion due to lack of jurisdiction under Rules 5A:3(b) and 5A:8(c).

Rule 5A:20(c) requires an assignment of error to "list . . . the specific errors in the rulings *below*." (Emphasis added). Raising an assignment of error in an opening brief is not the proper mechanism for challenging a previous ruling by this Court. Mother is essentially asking for a rehearing, which is only available after final disposition. *See* Rule 5A:33; Rule 5A:34.

Mother's assignment of error merely identified a purported error in a ruling by our Court, not any error in a ruling "below." Because the assignment of error does not comply with the requirements of Rule 5A:20(c), we dismiss it. *See* Rule 5A:20(c)(2) ("An assignment of error that does not address the findings, rulings, or failures to rule on issues in the trial court . . . is not sufficient. If the assignments of error are insufficient, the appeal will be dismissed.").

### C. Termination of Parental Rights

Mother's third assignment of error challenges the sufficiency of the evidence supporting the court's decision to terminate her parental rights pursuant to Code § 16.1-283(B) and (C)(2). She argues that the "evidence presented, along with the emotional and physical needs of the children, demonstrate that adoption and termination of parental rights was not in the best interest of the children." In her brief, mother repeated verbatim the objection she appended to the final orders terminating her parental rights, claiming that she "[s]ubstantially complied" with the statutes by providing "suitable housing for her minor children," that her twelve-month period for compliance

was "truncated by the Covid-19 Virus," that her "limited use of corporal punishment" did not constitute abuse, and that she was "receptive to changes suggested by Sussex DSS."

An appellant bears the burden to present a sufficient record from which the appellate court can review the assignments of error. *Justis v. Young*, 202 Va. 631, 632 (1961).

> We have many times pointed out that on appeal the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of. If the appellant fails to do this, the judgment will be affirmed.

*Id.*

In her assignment of error, mother asks this Court to review and reweigh the evidence and make a different factual determination in her favor. However, an appellate court does not "reweigh the evidence," *Nusbaum v. Berlin*, 273 Va. 385, 408 (2007), because it has no authority "to preside *de novo* over a second trial," *Haskins v. Commonwealth*, 44 Va. App. 1, 11 (2004). Furthermore, despite raising factual issues concerning the children's best interests, mother failed to ensure that the record contained the material necessary to enable appellate review of her position. *See Justis*, 202 Va. at 632. Because a transcript or statement of facts is indispensable to review her contention that the evidence was not sufficient to terminate her parental rights, this Court cannot fully consider her third assignment of error. *See* Rule 5A:8(b)(4)(ii) ("When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered.").

Additionally, the record that is before us supports affirming the judgment. Code § 16.1-283(B) provides that a court may terminate parental rights if "[t]he neglect or abuse suffered by [the] child presented a serious and substantial threat to his life, health[,] or development" and "[i]t is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent . . . within a

reasonable period of time." Code § 16.1-283(C)(2) states that a court may terminate parental rights if

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health[,] or other rehabilitative agencies to such end.

Here, the record indicates that the JDR court entered adjudicatory orders finding abuse and neglect in July 2019 and transferred the children to DSS custody on September 11, 2019. When the circuit court terminated mother's parental rights on March 26, 2021, the children had been in foster care for over eighteen months. The documentation DSS filed with the court reflects that during this time period, mother did not cooperate with DSS personnel, was not receptive to services, and did not substantially remedy the employment and housing difficulties that caused the children to be removed. The children had previously been in foster care between May 2013 and February 2016. Considering the record, we cannot say that the court abused its discretion in finding that DSS proved by clear and convincing evidence that termination was in the best interests of the children. *See* Code § 16.1-283(B) and (C) (both requiring "clear and convincing evidence" that termination of parental rights is "in the best interests of the child").

## CONCLUSION

The circuit court did not err in denying mother's motion for an extension of time to file a statement of facts because the motion was not timely filed in that court. Mother's contention that this Court erred in denying her motion for an extension of time is dismissed under Rule 5A:20(c). Finally, based on the record before us, we conclude that the court did not err in terminating mother's parental rights. Accordingly, we affirm the judgments below.

*Affirmed in part and dismissed in part.*